UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

JAMES SURRATT and
ROSE SURRATT,

    Plaintiffs,

v.                                      Civil Action No. 5:15-cv-15444
                                      Hon. Irene C. Berger

PINNACLE MINING COMPANY, LLC,

    Defendant.

**DEFENDANT PINNACLE MINING COMPANY, LLC'S[1], RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR EMERGENCY INJUNCITVE RELIEF**

**I.    INTRODUCTION**

Defendant operates a mine, coal preparation plant, and coal refuse impoundment in Wyoming County, West Virginia, employing over 450 miners and staff. On November 10, 2015, a group of ten landowners, including Plaintiffs James and Rose Surratt ("Plaintiffs"), filed civil actions in Wyoming County Circuit Court alleging damages to their properties from supposed undermining by Defendant, despite the fact that longwall mining has not yet taken place under their property. On November 15, 2015, a methane flare occurred in the basement of a vacant dwelling located next to Plaintiffs' home in Woosley hollow in Wyoming County. The event was reported by a neighbor to the West Virginia Department of Environmental Protection ("WVDEP") which has been investigating and responding to the methane flare since it was reported. WVDEP ordered Defendant to investigate the methane flare and begin comprehensive,

---

[1]    Hereinafter "Defendant" or "Pinnacle."

hourly, testing for methane at Plaintiffs' property and at other nearby properties in the hollow, and prepare an expert-generated plan for continued monitoring.

Two days later, Plaintiffs filed an Emergency Motion for Injunctive Relief with the Circuit Court of Wyoming County, sending notice to the Defendant by U.S. Mail, and requesting the Court order Defendant to undertake various remedies and investigations of the methane flare – many of which remedies had *already* been ordered by WVDEP. Defendant timely removed Plaintiffs' civil action to federal court the following Monday, November 23, 2015. The next day, Plaintiffs filed their Motion for Emergency Injunctive Relief (the "Motion"), asking this Court for the same relief they had requested from their initial "emergency" motion and *additional* injunctive relief, including the cessation of longwall mining in the area immediately underneath Plaintiffs' (and others') properties, forced intrusion onto others' properties, and the relocation of persons and families from the surrounding area.

Plaintiffs' Motion fails to comply with L.R. Civ. P. 7.1(a)(2)[2] or to state the proper standard for granting a motion for preliminary injunctive relief.[3] Regardless, the Motion must

---

[2] Making clear that "[a] memorandum of not more than 20 pages in length must accompany the following types of motions . . . (18) for injunctive relief or for a temporary restraining order." Plaintiffs' failed to include a memorandum. This is grounds to deny the Motion. *See Fox v. General Motors Corp.*, 859 F. Supp. 216 at n. 1, 220 (S.D. W. Va. 1994) (Holding under old rule that, "This Court notes nothing in the Local Rules permits counsel to choose when to file his memoranda . . . . supporting memoranda are to be filed with the motion at the time the motion is made. . . . . The Plaintiff failed to comply with Local Rule…. That alone provides basis to deny his motion...") *See also, Knisely v. Nat'l Better Living Ass'n*, 2014 U.S. Dist. LEXIS 114964 (N.D. W. Va. 2014) ("His failure to comply with Local Rule 15.01 alone is a basis for denying his request to amend."); *Robinson v. United States*, 2012 U.S. Dist. LEXIS 123901 (N.D. W. Va. 2012) ("the undersigned entered an Order striking this reply from the record and ordering it sealed because of Petitioner's failure to comply with the length requirements of Local Rule of Prisoner Litigation Procedure 11.3. (ECF No. 201.)")

[3] *See* Mot. at pp. 7-8. The Motion was filed subsequent to this matter being removed to this Court. The proper standard for granting preliminary injunctive relief is addressed *infra*.

also be denied because Plaintiffs have not offered any evidence of causation, and, consequently, have not clearly demonstrated that they are likely to succeed on the merits. Similarly, they have not clearly demonstrated that they will suffer irreparable harm absent preliminary injunctive relief.

The Motion admits that longwall mining has not taken place under or near Plaintiffs' property[4] and will not for weeks. These admissions are fatal to any claim that Defendant has proximately caused either (1) subsidence at Plaintiffs' property, or (2) methane gas to come up through Plaintiffs' water well. Second, Plaintiffs' expert, Scott Simonton (who is not a mining engineer and who does not claim to have conducted any scientific testing), does not conclude (1) that any gas at issue is from Pinnacle's mine (no doubt because mining is not occurring under Plaintiffs' property), (2) that any subsidence is a result of any mining (again, since mining is not occurring under their property), or (3) that mining should cease.[5]

Finally, the West Virginia Department of Environmental Protection ("WVDEP") - the regulatory agency charged with handling the very issues present in this case - has been on the ground since the methane flare at Plaintiffs' property was first reported. WVDEP, with its

---

[4] This is true. See Affidavit of Gary Hartsog, attached hereto as **Ex. A**. (and expert Hartsog's *Curriculum Vitae* at **Ex. E**). There is no longwall mining taking place under Plaintiffs' property and there is no evidence of subsidence at Plaintiffs' property. *Id*. Nor is there any indication that any methane gas present at Plaintiffs' well is from any of Defendants' mining or the result of any of Defendant's mining. *Id*.

[5] Mr. Simonton's affidavit was prepared on November 17, 2015. See Motion Ex. – at p. 3. This identical affidavit was attached as an exhibit to a motion for emergency injunctive relief that Plaintiffs filed in the Circuit Court for Wyoming County, West Virginia, shortly before Defendant removed this matter to this Court. *See* **Ex. B**. The motion file in Wyoming County, however, did not request that any mining be stopped. Nothing new has occurred since the motion for emergency relief was filed in Wyoming County, as evidenced by the failure to update Mr. Simonton's affidavit. In fact, as will be discussed, *infra*, the situation has improved and continues to improve.

extensive expertise, has issued clear directives to Pinnacle with respect to the monitoring for gas at Plaintiffs' property and the surrounding areas. *See* WVDEP Records, attached hereto as **Ex. C**. *See also* Monitoring Reports, attached hereto as **Ex. D**. As such, Pinnacle is already doing much of what Plaintiffs seek in their Motion.[6] Further, the evidence collected from the site and the adjacent areas at the Order of WVDEP, has demonstrated that the potential for danger and damage has continually been *decreasing* since the September 15, 2015, methane flare, while, in stark contrast, the scope and nature of the relief in Plaintiffs' Motion has continually increased, without any additional scientific, or logical explanation.

In other words, (1) mining is not occurring under Plaintiffs' property, (2) there is no evidence before this Court proving that any subsidence has been caused by Defendant's mining or that the gas at issue is emanating from Defendants' mine, (3) the situation is improving under the watchful eye of WVDEP, and (4) the extreme injunctive relief requested – in the form of ceasing mining – would accomplish nothing other than ensuring the shutdown of Pinnacle's business operations and the devastation of the economy of Wyoming County, West Virginia.[7]

Plaintiffs have simply not shown this Court that they are likely to prevail on the merits, they are likely to suffer irreparable harm in the absence of the preliminary relief, the balance of equities tips in their favor, or the injunctive relief sought is in the public interest.

---

[6] Mr. Surratt alleges that he is being harassed by his co-workers and seeks to have this Court put an end to such conduct. However, the Motion fails to include any evidence of this supposed harassment. Defendant intends to offer witnesses at the hearing on the Motion to refute this claim in the event that Mr. Surratt testifies as to this alleged harassment. Defendant's witnesses will make clear that Mr. Surratt has initiated communications with them, during which Mr. Surratt has apologized for bringing his lawsuit, indicated that had no idea that this Motion had been filed, and stated that he simply wanted to drop his lawsuit.

[7] See Docket Entry No. 1 at Ex. D.

## II. ANALYSIS

### A. Standard for preliminary injunctive relief

A plaintiff seeking preliminary injunctive relief **must** demonstrate: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"[A]ll four requirements must be satisfied" to obtain the "extraordinary remedy" of a preliminary injunction. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d. 342, 345-46, vacated on other grounds, 559 U.S. 1089 (2010). "As to the first two factors, *Winter* requires that the plaintiff **clearly** demonstrate that he will likely succeed on the merits **and** that he will likely be irreparably harmed absent preliminary relief. See *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009) (emphasis added)." *SWN Prod. Co., LLC v. Edge*, 2015 U.S. Dist. LEXIS 133008 at *7-8 (N.D. W. Va. 2015) (emphasis added).[8]

### B. Plaintiffs are not entitled to preliminary injunctive relief

    i. **Plaintiffs have not clearly demonstrated that they are likely to prevail on the merits**

---

[8] District courts within the Fourth Circuit have recognized that "[w]hen the facts are sharply disputed, a preliminary injunction will not be granted" because a preliminary injunction requires a "clear showing." *Prudential Sec., Inc. v. Plunkett*, 8 F. Supp. 2d 514, 516 (E.D. Va. 1998); *see Gantt v. Clemson Agr. Coll. of S.C.*, 208 F. Supp. 416, 418-19 (W.D.S.C. 1962) ("On an application for preliminary injunction, the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact," and "[a]s a prerequisite to the issuance of an interlocutory injunction, . . . [t]here must be no disputed issues of fact."); *see also First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 484 (4th Cir. 1970) (holding that contested factual issues "require resolution" before issuing a preliminary injunction).

Of critical importance, Plaintiffs admit that Pinnacle is not presently undermining their property. See Ex. A. Nor have they offered this Court with any evidence that the methane emanating from their well is coming from any of Defendant's mining operations. This all begs the question: how can Plaintiffs demonstrate that they are likely to prevail on their claims that Defendant trespassed and caused property damage? The answer is simple: Plaintiffs cannot. The fact that Pinnacle may longwall mine in the near future does not explain the damages that have allegedly occurred absent longwall mining, and the fact that injuries have allegedly occurred absent mining does not justify stopping mining that has not taken place. Causation "is the fundamentally important linchpin connecting allegedly wrongful conduct to liability,"[9] and any proof of causation is sorely lacking in this case. In failing to offer any evidence of causation, Plaintiffs have failed to clearly demonstrate to this Court that they are likely to succeed on the merits, as they ***must*** do, and their request for preliminary injunctive relief should be denied.

### ii. Plaintiffs have not clearly demonstrated that they will suffer irreparable harm in the absence of preliminary relief.

Even if this Court were to ignore Plaintiffs' failure to clearly demonstrate that they are likely to succeed on the merits, Plaintiffs have also not clearly demonstrated that they will suffer irreparable harm in the absence of preliminary relief. Plaintiffs have not provided this Court with any evidence that they have suffered subsidence damages as a result of Defendant's mining.[10] As Plaintiffs admit, Defendant is not mining under their property.

Nor is there any evidence that the gas emanating from Plaintiffs' well is increasing or that any gas is emanating from any other wells in the area. To the contrary, WVDEP's mandated

---

[9] *Mascarenas v. Miles Inc.*, 986 F. Supp. 582 (W.D. Mo. 1997). *See also, Taylor v. Kerr McGee Corp*, 2006 U.S. Dist. LEXIS 101345 (W.D. La. 2006)

[10] In fact, their motion lacks any evidence of subsidence, regardless of cause.

monitoring has shown that the volume of gas emanating from Plaintiffs' well is decreasing and there is no gas emanating from any other wells in the area. Further, the methane emanating from Plaintiffs' well is not from or the result of any of Defendant's mining operations. See Ex. A. Therefore, any claim that Plaintiffs or their neighbors are in danger is contradicted by the results of ongoing monitoring.

Defendant is actively monitoring the situation – as ordered by WVDEP[11] – and there is no clear showing – **_as required_** - that Plaintiffs will suffer irreparable harm if they are not granted preliminary relief while this case is litigated. This is especially true when the injunctive relief requested includes the cessation of mining despite the fact that there is no evidence (much less clearly established evidence) that any mining has caused the problems at issue in the case.[12]

### iii. **The balance of equities does not tip in Plaintiffs' favor**.

---

[11] WVDEP's decision making should be granted deference in this case and there is no reason for this Court to supplant WVDEP's ongoing control. *See e.g.*, *TNS, Inc. v. NLRB*, 296 F.3d 384 (6th Cir. 2002) ("In general, courts have held that scientific regulatory agencies such as the NRC should be given extreme deference within their area of expertise. *See Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103, 76 L. Ed. 2d 437, 103 S. Ct. 2246 (1983); *Fed. Power Comm'n v. Florida Power & Light Co.*, 404 U.S. 453, 463, 30 L. Ed. 2d 600, 92 S. Ct. 637 (1972); *Browning-Ferris Indus. v. Muszynski*, 899 F.2d 151, 160 (2d Cir. 1990) ("Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise."). As one amicus brief pointed out, this deference promotes efficiency, avoids unnecessary duplication of effort and helps to avoid the situation where an agency without expertise in an area countermands the determinations of agencies with that expertise, and thereby frustrates broader purposes."); *Hampton University v. Accred. Council for Pharm. Edu*, 611 F. Supp. 2d 557, 570 (ED. Va. 2009) (noting that "Courts in many Circuits, including within the Fourth Circuit, have repeatedly emphasized in no uncertain terms the great deference that should be afforded to accrediting organizations with respect to their substantive standards and professional judgment.") (citations omitted).

[12] And the remaining injunctive relief has either already been put in place by WVDEP (i.e. monitoring) or has not been deemed necessary by WVDEP (i.e. capping of wells, evacuation and relocation, and cessation of mining – all of which are in WVDEP's authority).

Moreover, the balance of equities does not tip in Plaintiffs' favor. Plaintiffs have asked for a variety of remedial measures, including hourly monitoring, capping of all wells in the area, relocating all residents in the area, and for Defendant to cease mining. However, in this case, WVDEP is aware of, and fully involved in, the situation and has ordered Defendant to actively monitor the area and report all results to WVDEP. During the course of and by way of its involvement, inspections, and ordered monitoring, WVDEP has determined that the gas at issue is only emanating from Plaintiffs' well and that the levels of gas are decreasing.

WVDEP has not made any determination that any wells need to be capped or that any residents should be evacuated. Nor has WVDEP decided that mining should be stopped – something that it could order if it believed that Defendant's mining was a danger to Plaintiffs and their neighbors. In fact, to the contrary, since the methane flare occurred in the uninhabited and vacant structure adjacent to plaintiffs' home, WVDEP has reduced the requirements that Defendant must undertake to ensure safety in the area; concluding that no other adjacent homes are affected by methane and that the methane is contained to the one gassy water well adjacent to the Surratt property. And, perhaps most importantly, and as already noted, there is no evidence that the methane emanating from Plaintiffs' well is from Defendant's mining operations, which means that continuing to mine will have no effect on Plaintiffs or their property.

On the other hand, if this relief was granted, this Court would be supplanting WVDEP's judgment and role without cause, thereby increasing Defendant's required activities and associated costs, and would impose a burden on local landowners, who aren't suffering from alleged subsidence damages or from methane flares, but on whose behalf relief is requested in the Motion. Furthermore, any cessation of mining would come at a devastating cost to Defendant – a cost that is not necessary in light of WVDEP's involvement and the fact that the situation is

improving. A decision to deny Plaintiffs' requested relief would have little effect on Plaintiffs, since active monitoring and state involvement would continue. Yet, a decision to grant Plaintiffs' request could permanently destroy Defendant's business operations

      iv.    **The public's interest is not served by the relief sought in the Motion**.

Finally, the injunctive relief sought by Plaintiffs is not in the public's interest. The level of gas emanating from Plaintiffs' well – the only source of gas detected – is decreasing. WVDEP has already put in place a plan for monitoring and there is no indication that WVDEP believes that Plaintiffs or any other nearby residents are in danger at this time, or that any mining needs to stop. In light of WVDEP's involvement, there is no need for the relief sought by Plaintiffs and the public's interest is not served by initiating remedial measures that go above and beyond what WVDEP has determined are necessary.

However, the public's interest would be ill-served by this Court granting Plaintiffs their desired injunctive relief in the form of requiring Defendant to cease mining in the area. As demonstrated by the record before this Court, the costs of stopping mining and/or relocated mining would be devastating. The cost would be high enough to likely lead to the closure of all of Defendant's mining operations. This would result in hundreds of layoffs (including Mr. Surratt's) in an economy that, as this Court is well aware, is struggling mightily. The ramifications of shutting down the largest private employer in Wyoming County – and the largest private contributor to the County's tax coffers – are obvious and cannot be overstated. Certainly these heavy economic consequences should be considered by this Court[13] and, in doing

---

13    *Anselmo v. Mull*, 2012 U.S. Dist. LEXIS 153708 (E.D. Cal. 2012) ("If Shasta County's motion for a preliminary injunction is granted, plaintiffs have represented that they will be forced to layoff their thirty-eight employees. (Anselmo Decl. ¶ 10.) This loss of employment is not insignificant in the current

so, it becomes clear that the public is ill-served by circumventing WVDEP's involvement and directives in this matter.

### III. CONCLUSION

Plaintiffs have asked this Court for preliminary injunctive relief even though WVDEP has boots on the ground and is actively monitoring the situation and even though their injunctive relief – as requested – would likely shutter Defendant's operations and result in the layoffs of hundreds of employees. Plaintiffs make their request to this Court despite that fact that they lack any proof that Defendant's actions have proximately caused their injuries – a basic causal connection required in order for Plaintiffs to clearly demonstrate that they are likely to prevail on the merits.

Plaintiffs' request also completely ignores WVDEP's ongoing involvement and the conclusions reached as a result of the continuing monitoring of Plaintiffs' property (and their neighbors' properties) by Defendant at the direction of WVDEP. In doing so, they have completely ignored the evidence that they will not be irreparably harmed if this Court were to deny their request. Likewise, Plaintiff has ignored any meaningful discussion of the equities at issue in their request.

Finally, and despite being in possession of an affidavit attached to Defendant's notice of removal that makes it clear that compliance with their requests will cause Defendant to cease business operations, Plaintiffs have ignored the reality that the public's interest is not at all served by issuing draconian remedies – remedies not included in their initial request for

---

economy and in an area where "[j]obs are scarce." (Id.)") In this case, far more than 38 employees' jobs are at risk.

injunctive relief in Wyoming County - that would result in the shutdown of Wyoming County's largest private employer, especially in the face of WVDEP's ongoing involvement.

Plaintiffs have not come close to demonstrating that they are entitled to any relief at this stage from this Court and their Motion should be denied.

Respectfully submitted this 30th day of November, 2015.

**By Counsel**

|  |  |
|---|---|
| | /s/John J. Meadows |
| | John J. Meadows (WVSB #9442) |
| | Peter J. Raupp (WVSB #10546) |
| | Jonathan R. Ellis (WVSB #10296) |
| **STEPTOE & JOHNSON PLLC** | 707 Virginia Street East 8th Floor |
| | P. O. Box 1588 |
| | Charleston, WV 25326-1588 |
| | Telephone: (304) 353-8000 |
| | Facsimile: (304) 353-8180 |
| | *Counsel for Defendant* |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

**JAMES SURRATT and**
**ROSE SURRATT,**

    **Plaintiffs,**

v.                                     Civil Action No. 5:15-cv-15444
                                            Hon. Irene C. Berger

**PINNACLE MINING COMPANY, LLC,**

    **Defendant.**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the "**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR EMERGENCY INJUNCITVE RELIEF**" was filed electronically with the Clerk of the Court this 30th day of November 2015, to be served by operation of the Court's electronic filing system upon the following on the same date, and which I also served by US Mail, first class postage prepaid, on:

Marvin W. Masters (WVSB # 2359)
Roger A . Decanio (WVSB # 8176)
The Masters Law Firm lc
181 Summers Street
Charleston, WV 25301
*Counsel for Plaintiffs*

                                  /s/ John J. Meadows
                                  John J. Meadows (WVSB #9442)
                                  *Counsel for Defendant*
                                  Steptoe & Johnson PLLC
                                  707 Virginia Street East 8th Floor
                                  P. O. Box 1588
                                  Charleston, WV 25326-1588
                                  Telephone:  (304) 353-8000
                                  Facsimile:  (304) 353-8180
                                  Email: john.meadows@steptoe-johnson.com